UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

JOHN RICHARD SNOWDEN,

    Plaintiff,

v.

COMMISSIONER OF SOCIAL
SECURITY,

    Defendant,
_____/

Case No. 1:16-CV-513

HON. ELLEN S. CARMODY

## **OPINION**

This is an action pursuant to Section 205(g) of the Social Security Act, 42 U.S.C. § 405(g), to review a final decision of the Commissioner of Social Security denying Plaintiff's claim for disability insurance benefits (DIB) under Title II of the Social Security Act. The parties have agreed to proceed in this Court for all further proceedings, including an order of final judgment. (ECF No. 9.)

Section 405(g) limits the Court to a review of the administrative record and provides that if the Commissioner's decision is supported by substantial evidence it shall be conclusive. The Commissioner has found that Plaintiff is not disabled within the meaning of the Act.

## **STANDARD OF REVIEW**

The scope of judicial review in a social security case is limited to determining whether the Commissioner applied the proper legal standards in making her decision and whether there exists in the record substantial evidence supporting that decision. *See Brainard v. Sec'y of Health & Human Servs.*, 889 F.2d 679, 681 (6th Cir. 1989). The Court may not conduct a *de novo*

review of the case, resolve evidentiary conflicts, or decide questions of credibility. *See Garner v. Heckler*, 745 F.2d 383, 387 (6th Cir. 1984). It is the Commissioner who is charged with finding the facts relevant to an application for disability benefits, and her findings are conclusive provided they are supported by substantial evidence. *See* 42 U.S.C. § 405(g).

Substantial evidence is more than a scintilla, but less than a preponderance. *See Cohen v. Sec'y of Health & Human Servs.*, 964 F.2d 524, 528 (6th Cir. 1992) (citations omitted). It is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *See Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Bogle v. Sullivan*, 998 F.2d 342, 347 (6th Cir. 1993). In determining the substantiality of the evidence, the Court must consider the evidence on the record as a whole and take into account whatever evidence in the record fairly detracts from its weight. *See Richardson v. Sec'y of Health & Human Servs.*, 735 F.2d 962, 963 (6th Cir. 1984). The substantial evidence standard presupposes the existence of a zone within which the decision maker can properly rule either way, without judicial interference. *See Mullen v. Bowen*, 800 F.2d 535, 545 (6th Cir. 1986) (citation omitted). This standard affords to the administrative decision maker considerable latitude, and indicates that a decision supported by substantial evidence will not be reversed simply because the evidence would have supported a contrary decision. *See Bogle*, 998 F.2d at 347; *Mullen*, 800 F.2d at 545.

**PROCEDURAL POSTURE**

This is the second time Plaintiff's application has reached this level of review. Plaintiff's application for benefits was previously considered by Magistrate Judge Hugh Brenneman, Jr. who, in a decision dated March 19, 2014, summarized the procedural history of this case to that point as follows:

> Plaintiff was born on February 9, 1959. He alleged a disability onset date of February 9, 2003. Plaintiff graduated from high school, attended about two years of college and had additional vocational training in working with sheet metal. He had previous employment as a salesman, floor layer and factory worker. Plaintiff identified his disabling conditions as depression, multiple sclerosis and restrictive breathing disease. The administrative law judge (ALJ) reviewed plaintiff's claim *de novo* and entered a written decision denying benefits on February 25, 2011. This decision, which was later approved by the Appeals Council, has become the final decision of the Commissioner and is now before the Court for review.

(*Snowden v. Comm'r of Soc. Sec.*, No. 1:12-cv-1091 ECF No. 19, PageID.599–600) (internal citations and footnotes omitted). Magistrate Judge Brenneman further noted that Plaintiff had been found disabled for purposes of a separate Title XVI application in September 2009, approximately nine months after his date last insured. (*Id.*) Judge Brenneman then proceeded to conclude that the Commissioner's decision was not supported by substantial evidence, remanded the case, and directed the Commissioner to "evaluate Dr. Sullivan's January 25, 2011 report to determine if plaintiff suffered from multiple sclerosis prior to his date last insured of December 31, 2007 and the extent of his symptoms at that time. In addition, the Commissioner should re-evaluate the testimony of Rev. Meredith and the vocational evidence in light of Dr. Sullivan's opinion." (*Snowden v. Comm'r of Soc. Sec.*, No. 1:12-cv-1091 ECF No. 19, PageID.610–611.)

On May 31, 2014, consistent with Judge Brenneman's order, the Appeals Council vacated the prior administrative decision and remanded the case to ALJ Prothro for further action. (PageID.668–670.) On October 6, 2014, Plaintiff appeared with his counsel before ALJ Prothro for an administrative hearing at which time Plaintiff, a medical expert, Rev. Meredith (an acquaintance of Plaintiff), and a vocational expert (VE) all testified. (PageID.573–630.) In a written decision, dated October 17, 2014, the ALJ determined that Plaintiff was not disabled. (PageID.551–572.) On

October 2, 2015, the Appeals Council declined to review the ALJ's decision, making it the Commissioner's final decision in the matter. (PageID.543.) Plaintiff subsequently initiated this action under 42 U.S.C. § 405(g).

As alluded to above, Plaintiff's insured status expired on December 31, 2007. (PageID.555.) To be eligible for DIB under Title II of the Social Security Act, Plaintiff must establish that he became disabled prior to the expiration of his insured status. *See* 42 U.S.C. § 423; *Moon v. Sullivan*, 923 F.2d 1175, 1182 (6th Cir. 1990).

## ALJ'S DECISION

The social security regulations articulate a five-step sequential process for evaluating disability. *See* 20 C.F.R. § 404.1520(a-f).[1] If the Commissioner can make a dispositive finding at any point in the review, no further finding is required. *See* 20 C.F.R. § 404.1520(a). The regulations also provide that if a claimant suffers from a nonexertional impairment as well as an exertional impairment, both are considered in determining the claimant's residual functional capacity (RFC). *See* 20 C.F.R. § 404.1545.

---

[1]
1. An individual who is working and engaging in substantial gainful activity will not be found to be "disabled" regardless of medical findings (20 C.F.R. § 404.1520(b));

2. An individual who does not have a "severe impairment" will not be found "disabled" (20 C.F.R. § 404.1520(c));

3. If an individual is not working and is suffering from a severe impairment which meets the duration requirement and which "meets or equals" a listed impairment in Appendix 1 of Subpart P of Regulations No. 4, a finding of "disabled" will be made without consideration of vocational factors (20 C.F.R. § 404.1520(d));

4. If an individual is capable of performing work he or she has done in the past, a finding of "not disabled" must be made (20 C.F.R. § 404.1520(e));

5. If an individual's impairment is so severe as to preclude the performance of past work, other factors including age, education, past work experience, and residual functional capacity must be considered to determine if other work can be performed. (20 C.F.R. § 404.1520(f)).

The burden of establishing the right to benefits rests squarely on Plaintiff's shoulders, and he can satisfy his burden by demonstrating that his impairments are so severe that he is unable to perform his previous work and cannot, considering his age, education, and work experience, perform any other substantial gainful employment existing in significant numbers in the national economy. *See* 42 U.S.C. § 423(d)(2)(A); *Cohen*. 964 F.2d at 528. While the burden of proof shifts to the Commissioner at step five, Plaintiff bears the burden of proof through step four of the procedure, the point at which his RFC is determined. *See Bowen v. Yuckert*, 482 U.S. 137, 146 n.5 (1987); *Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 528 (6th Cir. 1997) (noting that the ALJ determines RFC at step four, at which point the claimant bears the burden of proof).

The ALJ determined that Plaintiff's claim failed at step five. At step one, the ALJ found that Plaintiff did not engage in substantial gainful activity during the period between February 9, 2003 (his alleged disability onset date) and December 31, 2007 (his date last insured). (PageID.556–557.) At step two, the ALJ found that through his date last insured, Plaintiff suffered from the severe impairment of multiple sclerosis. (PageID.557–559.) At step three, the ALJ found that Plaintiff did not have an impairment or combination of impairments that met or equaled the requirements of the Listing of Impairments found in 20 C.F.R. Pt. 404, Subpt. P, App. 1. (PageID.559.) At step four, the ALJ determined Plaintiff retained the RFC based on all the impairments, through his date last insured:

> to perform light work as defined in 20 CFR 404.1567(b) except limited to lifting or carrying 20 pounds occasionally and 10 pounds frequently; he could sit for up to 6 hours and stand or walk, in combination, for up to 6 hours in an 8-hour workday; he was further limited to only occasional use of his hands for handling, fingering or feeling.

(PageID.559.) Continuing with the fourth step, the ALJ found that through his date last insured,

Plaintiff was unable to perform any of his past relevant work. (PageID.564.) At the fifth step, the ALJ questioned the VE to determine whether a significant number of jobs exist in the economy that Plaintiff could have performed through his date last insured, given his limitations. *See Richardson*, 735 F.2d at 964. The VE testified that Plaintiff could perform other work as a surveillance systems monitor (1,100 regional 49,000 national positions). (PageID.624.) Based on this record, the ALJ found that Plaintiff was capable of making a successful adjustment to work that exists in significant numbers in the national economy. (PageID.564–565.)

Accordingly, the ALJ concluded that Plaintiff was not disabled from February 9, 2003, the alleged disability onset date, through December 31, 2007, Plaintiff's date last insured. (PageID.565.)

### DISCUSSION

**1.     The ALJ's Evaluation of the Medical Opinion Evidence.**

The record before the ALJ in the prior decision included a January 25, 2011, letter from Dr. Herman Sullivan, M.D., Plaintiff's neurologist. In his note, the doctor remarked:

> I am writing in regards to Mr. John Snowden who is a patient of mine in the Multiple Sclerosis Clinic at the Hauenstein Center at Saint Mary's Health Care. Mr. Snowden is being followed for relapse-remitting multiple sclerosis with secondary progression. Mr. Snowden was first evaluated by me in 08/2008 when he presented at that time with a chief complaint of progressive discoordination, instability and gait ataxia. He had been suffering from these symptoms for several years. The evaluation that was performed as an outpatient included neuroimaging, which confirmed the presence of demyelinating lesions consistent with multiple sclerosis. Based on the patient's clinical history and what we know about the development of demyelinating plaques and MS, this had been present for a number of years.
>
> Mr. Snowden continues to be affected by this neurological disease. He has been on disease-modifying agents in the past. However, some

> of the neurological disability that has ensued as a consequence of the inflammatory abnormalities in the brain have resulted in persistence of neurological deficits. In my opinion, Mr. Snowden's ataxia, gait instability, dysarthria and ocular motor changes are irreversible at this point in time. He has speech difficulties and some element of discognition due to the disconnecting effect of these lesions. Mr. Snowden would not perform well being fully employed.

(PageID.300.) Judge Brenneman determined that it was clear the agency received this letter prior to the first administrative hearing, but nonetheless the first decision stated "there is no opinion from a treating doctor regarding the claimant's physical status." (*Snowden v. Comm'r of Soc. Sec.*, No. 1:12-cv-1091 ECF No. 19, PageID.606.) Judge Brenneman thus remanded the case to resolve the contradiction between the record and the ALJ's decision. Plaintiff claims the ALJ has "repeated" the errors in the determination presently before this Court. The Court disagrees.

By way of background the treating physician doctrine recognizes that medical professionals who have a long history of caring for a claimant and his maladies generally possess significant insight into his medical condition. *See Barker v. Shalala*, 40 F.3d 789, 794 (6th Cir. 1994). An ALJ must, therefore, give controlling weight to the opinion of a treating source if: (1) the opinion is "well-supported by medically acceptable clinical and laboratory diagnostic techniques" and (2) the opinion "is not inconsistent with the other substantial evidence in the case record." *Gayheart v. Comm'r of Soc. Sec.*, 710 F.3d 365, 375–76 (6th Cir. 2013) (quoting 20 C.F.R. § 404.1527).

Such deference is appropriate, however, only where the particular opinion "is based upon sufficient medical data." *Miller v. Sec'y of Health & Human Servs.*, 1991 WL 229979 at *2 (6th Cir., Nov. 7, 1991) (citing *Shavers v. Sec'y of Health & Human Servs.*, 839 F.2d 232, 235 n.1 (6th Cir. 1987)). The ALJ may reject the opinion of a treating physician where such is unsupported

by the medical record, merely states a conclusion, or is contradicted by substantial medical evidence. *See Cohen*, 964 F.2d at 528; *Miller*, 1991 WL 229979 at *2 (citing *Shavers,* 839 F.2d at 235 n.1); *Cutlip v. Sec'y of Health & Human Servs.*, 25 F.3d 284, 286–87 (6th Cir. 1994).

If an ALJ accords less than controlling weight to a treating source's opinion, the ALJ must "give good reasons" for doing so. *Gayheart*, 710 F.3d at 376. Such reasons must be "supported by the evidence in the case record, and must be sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and the reasons for that weight." This requirement "ensures that the ALJ applies the treating physician rule and permits meaningful review of the ALJ's application of the rule." *Id.* (quoting *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 544 (6th Cir. 2004)). Simply stating that the physician's opinions "are not well-supported by any objective findings and are inconsistent with other credible evidence" is, without more, too "ambiguous" to permit meaningful review of the ALJ's assessment. *Id.* at 376–77.

After a review of the record, the Court finds no error with regards to the ALJ's discussion of the medical opinion evidence. As an initial matter, even a cursory review of the ALJ's second decision demonstrates ALJ Prothro did not "repeat" the mistakes from the earlier decision. In the first decision, the ALJ failed to discuss Dr. Sullivan's January 2011 statement at all, here the ALJ provided an exhaustive discussion of the statement. (PageID.561, 563.) The ALJ also extensively considered a June 2011 sworn statement from the doctor that was obtained by Plaintiff's counsel after the first decision. (*Id.*) Accordingly, the contradiction that was present in the prior decision is not present here. Moreover, the ALJ gave good reasons for assigning these opinions only partial weight. The ALJ discussed the respective opinions from Dr. Sullivan as follows:

8

> Moreover, the undersigned has considered the January 2011 and June 2011 reports of Dr. Sullivan (Exhibits 14E; 19F). In deciding whether or not to adopt the treating source's opinion in this situation, the following factors are to be considered along with any other appropriate factors: the examining relationship, the treatment relationship in terms of its frequency and duration, supportability, consistency, and specialization. Particular attention is to be given to the consistency of the opinion with other evidence, the qualifications of the source, and the degree to which the source offers supporting explanations for the opinion (20 CFR 416.927(d) & (f) and Social Security Ruling 96-2p). The opinions are afforded partial weight as the reports speculate that the claimant's disabling condition existed prior to the date last insured, without any objective medical evidence in the record prior to December 31, 2007 to support the conclusions. However, the remainder of the opinion that the claimant would have met the requirements of the multiple sclerosis listing in August 2008 is consistent with the examination findings, diagnostic testing and the medical evidence of record as a whole at that point and the testimony of Dr. Rack.

(PageID.563.) As found by the ALJ, Dr. Sullivan's statements were speculative and inconsistent with the record. This conclusion is well supported. In his June 2011 statement, Dr. Sullivan stated that Plaintiff's type of multiple sclerosis "typically will come and go before there is a period of neurological progression of deficits, or silent lesions of a scan that eventually will cause neurological changes that progress or don't go away." (PageID.519.) He noted, that when he saw Plaintiff in 2008, Plaintiff "had symptoms for decades, but had apparently gotten a lot worse" in the months before. (PageID.520.) Dr. Sullivan confirmed Plaintiff's attorney's statement that Plaintiff had very little medical treatment prior to his visit with Dr. Sullivan in 2008. (PageID.520.) He noted that in Plaintiff's case, the degenerative changes were "more nonlinear" with changes "rather dramatically within that calendar year [of 2008] compared to years prior." (PageID.522.) He stated, however, that when he saw Plaintiff in August 2008, Plaintiff had "significant ataxia, unsteady gait, disequilibrium. His exam showed a wide-based gait, clumsiness of the use of his limbs, in particular

9

his lower extremities; some changes in speech, some slurring of speech, which is also part of this ataxic syndrome; and hyperreflexia, which is an indication of motor tract involvement." (PageID.523.) He agreed with Plaintiff's attorney that it was "highly unlikely" Plaintiff would have gone from starting MS to having the symptoms he saw in August 2008 within one year, thus indicating that Plaintiff had symptoms prior to his date last insured. (PageID.524.) But as the ALJ observed, Dr. Sullivan never stated what those limitations prior to the onset date were. Indeed, the doctor agreed with Plaintiff's attorney that "we don't know exactly how much [Plaintiff's symptom's] worsened. (PageID.523–524.) Finally, the opinion also was inconsistent with the record. As the ALJ observed, the only notes during the relevant time period indicated that Plaintiff was in "good health," was feeling "pretty good," and was only taking medication for his depression. (PageID.317, 351.) In order to be entitled to controlling weight, an opinion must be "well-supported by medically acceptable clinical and laboratory diagnostic techniques" *Gayheart*, 710 F.3d at 375–76. Dr. Sullivan's opinions are not well supported.

Plaintiff concludes by faulting the ALJ for elevating the medical expert's opinion above that of Dr. Sullivan's opinion because the expert refused to consider the testimony of Reverend Meredith. In appropriate circumstances, opinions from State agency medical and psychological consultants and other program physicians and psychologists may be entitled to greater weight than the opinions of treating or examining sources." SSR 96-6P, 1996 WL 374180, at *3 (S.S.A. July 2, 1996). When an ALJ has provided "good reasons" for discounting a treating physician's opinion, as is the case here, the ALJ is not required to afford less weight to the state agency source's opinions as long as it is supported by the evidence of record. *See Helm v. Comm'r of Soc. Sec.*, 405 F. App'x 997, 1002 (6th Cir. 2011). Here, the ALJ found the expert's opinion was

10

"consistent with the lack of objective evidence prior to December 31, 2007, the claimant's physical exams, findings on diagnostic testing and the medical evidence of record as a whole." (PageID.563.) Plaintiff's assertion does nothing to demonstrate error. Moreover, any error in failing to listen to the lay testimony was harmless as the expert heard Plaintiff's attorney summarize the lay opinion testimony at the hearing before rendering his opinion. (PageID.589, 591.)

The question, of course, is not whether the Court would have arrived at the same conclusion regarding these opinions, but whether there is substantial evidence to support the decision reached by the ALJ. For all the above reasons, the Court finds the ALJ's evaluation of the medical opinions in the record is supported by substantial evidence. Plaintiff's claim of error is denied.

### 2. The ALJ's Evaluation of Plaintiff's RFC.

In a short, disjointed paragraph, Plaintiff contends the ALJ's RFC evaluation is unsupported by substantial evidence. (PageID.1006–1007.) It appears Plaintiff may be asserting that the ALJ's RFC is unsupported by substantial evidence for two reasons. First, Plaintiff contends the ALJ improbably found his testimony not to be fully credible. (PageID.1006.) While it is true the ALJ found Plaintiff complaints were "not entirely credible" (PageID.560), Plaintiff has not alleged any specific error with regard to the ALJ's credibility analysis beyond a single conclusory remark. (PageID.1006.) "'Issues adverted to in a perfunctory manner, unaccompanied by some effort at developed argumentation, are deemed waived. It is not sufficient for a party to mention a possible argument in the most skeletal way, leaving the court to . . . put flesh on its bones.'" *United States v. Stewart*, 628 F.3d 246, 256 (6th Cir. 2010) (quoting *McPherson v. Kelsey*, 125 F.3d 989, 995–96 (6th Cir. 1997)); *see United States v. Elder*, 90 F.3d 1110, 1118 (6th Cir. 1996); accord

11

*Curler v. Comm'r of Soc. Sec.*, 561 F. App'x 464, 475 (6th Cir. 2014) ("[P]laintiff develops no argument to support a remand, and thus the request is waived."). Plaintiff has waived this claim.

Secondly, Plaintiff may be attacking the fact that the RFC determination is not clearly reflected in any medical opinion in the record. (PageID.1006–1007.) To the extent Plaintiff claims the ALJ improperly crafted an RFC out of whole cloth, he cannot succeed. When evaluating the claimant's RFC, the ALJ is not required to base his RFC findings entirely on a physician's opinion. *See Rudd v. Comm'r of Soc. Sec.*, 531 F. App'x 719, 728 (6th Cir. 2013) (quoting SSR 96–5p) ("[T]o require the ALJ to base her RFC finding on a physician's opinion, 'would, in effect, confer upon the treating source the authority to make the determination or decision about whether an individual is under a disability, and thus would be an abdication of the Commissioner's statutory responsibility to determine whether an individual is disabled.'"). It is the ALJ who has the ultimate responsibility for assessing a claimant's RFC, based on all of the relevant evidence. *See* 20 C.F.R. § 404.1545(a); *Webb v. Comm'r of Soc. Sec.*, 368 F.3d 629, 633 (6th Cir. 2004) ("The ALJ is charged with the responsibility of evaluating the medical evidence and the claimant's testimony to form an assessment of [his] residual functional capacity") (internal quotation marks and citations omitted.) It not the ALJ's burden to seek out medical opinions to prove or disprove a disability claim. *Brown v. Comm'r of Soc. Sec.*, 602 F. App'x 328, 331 (6th Cir. 2015). Rather, it is Plaintiff's obligation to provide evidence to support his claim of disability. 20 C.F.R § 404.1512(c). The medical evidence in this case has not confirmed the presence of a disabling impairment.

### 3. The ALJ's Evaluation of the Lay Testimony.

At the administrative hearing, the ALJ heard testimony from Reverend Thurlin Meredith. The Reverend testified that Plaintiff started living with him in the early 2000's after

separating from his wife. (PageID.616.) He further testified that he had noticed Plaintiff's gait was "off" and wasn't tracking right. (PageID.617.) In spring of 2004, Plaintiff did some tile work in his kitchen and did a beautiful job. (PageID.617.) Two years later, however, when the reverend asked Plaintiff to do some work in his bathroom, Plaintiff did not do a good job. (PageID.617.) During this period, the reverend also noticed that Plaintiff's hands would shake. (PageID.618.) The ALJ gave the reverend's testimony "limited weight:"

> The statements of Reverend Meredith are not supported by the claimant's complaints to his doctors prior to December 31, 2007. Clearly, there was a change in his condition in 2008 that led the claimant to more aggressively seek medical treatment. Presumably, had he been that impaired prior to December 31, 2007, he would have sought such treatment then. While statements were made that the claimant did not have comprehensive medical insurance, there is no evidence that the claimant sought out care for those individuals with no medical insurance or attempted to receive care at the emergency department, if indeed his symptoms were as debilitating as alleged. In addition, the claimant not only admitted being in good health in September 2007 (Exhibit 4F/9), but he also told his doctor in July 2008 that up until that point, he had been capable of doing odd jobs for cash (Exhibit 4F.11). Therefore, the testimony of Reverend Meredith is not persuasive of disability prior to the date last insured when compared with the rest of the evidence.

(PageID.563.) "The testimony of lay witnesses . . . is entitled to perceptible weight only if it is fully supported by the reports of the treating physicians." *Simons v. Barnhart*, 114 F. App'x 72, 733 (6th Cir. 2004) (citing *Lashley v. Sec'y of Health & Human Servs.*, 708 F.2d 1048, 1054 (6th Cir. 1983). Here, the ALJ properly discounted Rev. Meredith's testimony because it was not supported by the medical record. Plaintiff's claim that the ALJ "ignored this Court's previous ruling" is not persuasive as the previous ruling was based on the ALJ's failure to properly consider Dr. Sullivan's opinion. Because the ALJ's error beared on the evaluation of the reverend's opinion, Judge Brenneman stated that the Commissioner should re-evaluate the opinion. (*Snowden v. Comm'r of*

*Soc. Sec.*, No. 1:12-cv-1091 ECF No. 19, PageID.609.) The Commissioner has done so, and this Court has found that the ALJ's decision properly considered Dr. Sullivan's opinion. Having identified no other alleged error, Plaintiff's claim of error is rejected.

### 4. The ALJ Properly Relied on the Vocational Expert's Testimony.

Plaintiff also argues that the ALJ's finding at step five of the sequential evaluation process is unsupported by the evidence. While the ALJ may satisfy his burden through the use of hypothetical questions posed to a vocational expert, such questions must accurately portray Plaintiff's physical and mental impairments. *See Cline v. Comm'r of Soc. Sec.*, 96 F.3d 146, 150 (6th Cir. 1996). The hypothetical question which the ALJ posed to the vocational expert simply asked whether there existed jobs which an individual could perform consistent with Plaintiff's RFC, to which the vocational expert indicated that there existed in the national economy approximately 49,000 such jobs. The ALJ's RFC determination is supported by substantial evidence and there was nothing improper or incomplete about the hypothetical questions the ALJ posed to the vocational expert. The Court concludes, therefore, that the ALJ properly relied upon the vocational expert's testimony.

### CONCLUSION

For the reasons articulated herein, the undersigned concludes that the ALJ's decision is supported by substantial evidence and is therefore **AFFIRMED.**

A separate judgment shall issue.

Date: September 20, 2017  /s/ Ellen S. Carmody
ELLEN S. CARMODY
United States Magistrate Judge